UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

CARMEN RIVERA,                                          :
                     Plaintiff,       :
                                        :

              v.                                :        No.   5:26-cv-0787
                                          :

PROGRESSIVE SPECIALTY INSURANCE                         :
COMPANY, and JOHN DOE(S) #1-39,                          :
                      Defendants.      :

---

**O P I N I O N**
**Plaintiff's Motion to Remand, ECF No. 12 – Denied**
**Defendant Progressive Specialty Insurance Company's Motion to Dismiss Count II, ECF**
**No. 10 – Granted in part**

**Joseph F. Leeson, Jr.**                                        **May 11, 2026**
**United States District Judge**

## I.      INTRODUCTION

This case stems from a motor vehicle accident. Plaintiff Carmen Rivera was driving her car in Allentown, Pennsylvania, when she was rear-ended by an uninsured motorist. Rivera sought coverage under her policy with Defendant Progressive Specialty Insurance Company ("Progressive"), which provided for uninsured motorist coverage, but received an offer well-below her policy limits. Rivera filed suit against Progressive and several unnamed "John Doe" Defendants for breach of contract and bad faith. The case was initially filed in the Court of Common Pleas of Lehigh County but was removed to this Court by Progressive pursuant to 28 U.S.C. § 1332. Progressive has since moved to dismiss the bad faith claim against it under Fed. R. Civ. P. 12(b)(6), and Rivera has moved to remand the case to state court, arguing that the jurisdictional amount-in-controversy requirement is not met. For the reasons expounded upon

1
051125

below, the Court will deny the Motion to Remand and partially grant the Motion to Dismiss the

bad faith claim against Progressive.

## II.    BACKGROUND

### A. Factual Allegations

On February 28, 2025, while driving her car in Allentown, Pennsylvania, Carmen Rivera

was rear-ended by another driver: third-party tortfeasor Elisha Torres. *See* Compl. ¶¶ 12-15, ECF

No. 1 at Exhibit "A."[1] Rivera alleges that, as a result of the collision, she suffered emotional

pain, suffering, mental anguish, and depression, along with several physical injuries, including:

concussion; traumatic brain injury; post-concussion syndrome; headaches; convergence

insufficiency; deficient eye movements; astigmatism; blurred vision; vestibular function

disorder; unsteadiness on her feet; muscle, fascia, and tendon strain; dizziness; light sensitivity;

sleep deprivation; major depressive disorder, and generalized anxiety disorder. *See id.* at ¶ 19.

Rivera further alleges that her injuries will "continue to require" costly medical treatments,

including "surgery, physical therapy, x-rays, diagnostic testing, use of pain medications, medical

support equipment, and the use of rehabilitation services." *Id.* at ¶ 22.

At the time of the collision, Rivera was insured by Progressive Specialty Insurance

Company[2] ("Progressive") and her policy provided for uninsured and underinsured motorist

coverage in the amount of $50,000 per person and $100,000 per incident with non-stacked

coverage. *See id.* at ¶¶ 34-35. Third-party tortfeasor Elisha Torres did not maintain liability

---

[1]    The Complaint is attached to the Notice of Removal, ECF No. 1, as Exhibit "A," but was not given its own ECF docket number or new pagination. The Complaint, in its entirety, may be found at ECF No. 1, pages 14 through 37. Any reference to the Complaint shall be made using the paragraph numbers therein.

[2]    Defendant Progressive Specialty Insurance Company ("Progressive") indicates in its Motion to Dismiss that it was "incorrectly identified as Progressive Advanced Insurance Company" by Rivera in the Complaint, and that its correct company name is "Progressive Specialty Insurance Company." *See* Motion to Dismiss, ECF No. 10.

051125

coverage for the vehicle she was driving. *Id.* at ¶ 39. Rivera filed an uninsured motorist claim with Progressive, *id.* at ¶ 42, and on October 6, 2025, Progressive conveyed a settlement offer of $19,000, which it believed "represent[ed] the fair value of the claims," *id.* at ¶ 40, "based on the information [they] ha[d] to date" regarding Rivera's medical expenses, *id.* at Exhibit "C," ECF No 1. at 45.[3] Rivera, however, believes this to be insufficient compensation for her injuries. *See generally id.*

### B. Procedural History

On January 7, 2026, Plaintiff Rivera initiated this action against Defendant Progressive and thirty-nine unnamed "John Doe" Defendants (John Does #1-39), in the Court of Common Pleas of Lehigh County. *See* Compl. Rivera's Complaint brings two claims for breach of contract related to the uninsured motorist claim, one against Progressive (Count I) and one against the John Doe Defendants (Count III) *See id.* Rivera's Complaint also brings two bad faith claims, against Progressive (Count II) and the John Doe Defendants (Count IV), respectively. *See id.* Count II alleges that Progressive acted in bad faith by failing to conduct a fair investigation and evaluation of Rivera's claims, *see id.* at ¶¶ 60(c)-(d), (k), (q)-(r), by making an unreasonably low settlement offer in disregard for Rivera's medical bills and related expenses, *see id.* at ¶ 60(a), Exhibit "C," and by engaging in other bad faith behaviors throughout the claims process, *see id.* at ¶ 60. Rivera seeks recovery under her policy with Progressive, and requests damages "in an amount in excess of Fifty Thousand Dollars ($50,000.00),"[4] as well as compensatory damages,

---

[3]     This citation refers to Exhibit "C" of the Complaint, not the Notice of Removal. Complaint Exhibit "C" can be found at ECF No. 1, page 45.

[4]     The Court notes that the last paragraph in Count IV of the Complaint seeks "an amount in excess of One Hundred and Fifty Thousand Dollars ($50,000)" for the bad faith claim against the John Doe Defendants. *See* Compl. ¶ 88. Given that the written number does not match the numerals in parentheses, the Court assumes that "One Hundred and Fifty Thousand Dollars" is a typographical error and that Rivera intended to say "Fifty Thousand Dollars" to match the figure

punitive damages, interest, costs of suit, attorney's fees and any other damages permissible. *Id.* at ¶¶ 58, 65, 81, 88.

Progressive removed the case to this Court on February 6, 2026, alleging complete diversity jurisdiction. *See* Notice of Removal, ECF No. 1. The Notice of Removal asserts that complete diversity of citizenship exists because Rivera is a citizen of Pennsylvania and Progressive is an Ohio corporation with a principal place of business in Ohio. *Id.* at ¶¶ 4-9. The Notice of Removal also asserts that the amount-in-controversy requirement is satisfied because Rivera's request for at least $50,000 in uninsured motorist coverage, coupled with her request for punitive damages and attorney's fees on the bad faith claims, amounts to at least $75,000. *See id.* at ¶¶ 10-17 (citing 28 U.S.C. § 1332).

On February 13, 2026, Progressive filed a Motion to Dismiss Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Motion to Dismiss, ECF No. 10; *see also* Brief in Support of Motion to Dismiss, ECF No. 10-1. In it, Progressive argues that Rivera's Complaint fails to allege facts sufficient to support a bad faith claim above the speculative level. *See id.* On February 27, 2026, Rivera filed a Brief in Opposition to the Motion to Dismiss Count II. *See* ECF No. 11. Progressive filed a Reply Brief in Support of its Motion to Dismiss on March 6, 2026. *See* ECF No. 13. On March 2, 2026, Rivera filed a Motion to Remand, arguing that Progressive failed to show that the $75,000 amount-in-controversy threshold was met for purposes of establishing diversity jurisdiction on removal. *See* Motion to Remand, ECF No. 12. On March 16, 2026, Progressive filed a Response in Opposition to the Motion to Remand, arguing that its allegations in the Notice of Removal were sufficient to show that the amount in

---

"$50,000," as is represented in each of her other requests for relief, following Counts I-III. *See id.*

controversy meets the jurisdictional requirement. *See* ECF No. 14. The arguments for remand and partial dismissal are now fully briefed, and the Court is prepared to render a decision on the motions.

## III.   LEGAL STANDARDS

### A.  Motion to Remand based on Amount in Controversy

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." *See Lane v. CBS Broad. Inc.*, No. 08-cv-3175, 2008 WL 3930287, at *2, *2 n.4 (E.D. Pa. Aug. 27, 2008) ("State-court actions that originally could have been filed in federal court may be removed to federal court.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also* 28 U.S.C. § 1446. "The party seeking removal carries the burden of proving that removal is proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)); *see Lane*, 2008 WL 3930287, at *2 ("The removing party bears the burden of proving that federal subject matter jurisdiction exists.") (citing *Samuel-Bassett*, 357 F.3d at 396). However, once removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 477 (E.D. Pa. 2013) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

If removal is sought on the basis of diversity jurisdiction under 28 U.S.C. § 1332, the amount in controversy is calculated as follows:

> [T]he sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--
>> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
>>> (i) nonmonetary relief; or
>>> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2). "The amount in controversy is generally decided from the face of the complaint." *Wilson v. Walker*, 790 F. Supp. 2d 406, 407 (E.D. Pa. 2011) (citing *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993)); *see also Rigney v. Felicia*, 433 F. Supp. 2d 534, 536 (E.D. Pa. 2006). If the matter is not removable solely because the amount in controversy does not meet the minimum threshold, "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under 28 U.S.C. § 1446(b)(3)." *Id.* at § 1446(c)(3)(A). Where there exists a factual dispute over what is recoverable in a case, "the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence." *See Samuel-Bassett*, 357 F.3d at 397-98 (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)). Where the facts are undisputed, the Court must determine "whether 'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)).

"When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied," *Packard*, 994 F.2d at 1046 (citing *Bell v. Preferred Life Assurance Soc'y of Montgomery, Ala.*, 320 U.S. 238,

6
051125

240 (1943)), unless the claim for punitive damages is "patently frivolous and without foundation," *id.* (citing *Gray v. Occidental Life Ins. Co.*, 387 F.2d 935, 936 (3d Cir. 1968)), or "comprises the bulk of the amount in controversy," *id.* "Attorney's fees should also be considered as 'part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.'" *Davis v. American Freedom Assurance*, No. 26-cv-1419, 2026 WL 982864, at *1 (E.D. Pa. Apr. 13, 2026) (citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997)). "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus*, 989 F.2d at 146 (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977)).

### B. Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 679-79 (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding

a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, a "document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### C.  Bad Faith Claims – Review of Applicable Law

"To recover on a bad faith claim, a claimant is required to show by clear and convincing evidence that: (1) the defendant insurer did not have a reasonable basis for denying the policy benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis when it denied the claim." *Camp v. New Jersey Manufacturers Ins. Co.*, No. 16-cv-1087, 2016 WL 3181743, at *4 (E.D. Pa. June 8, 2016) (citing *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)). To state a bad faith claim for an insurer's failure to pay a claim, "the plaintiff must allege an underlying element of self-interest or ill will." *O'Brien v. Liberty Mut. Ins.*, No. 21-cv-01234, 2021 WL 3203405, at *2 (E.D. Pa. July 28, 2021). "Mere negligence or bad judgment on the part of an insurer is not considered to be bad faith." *Id.* "Courts in this Circuit have routinely dismissed bad faith claims reciting only 'bare-bones' conclusory allegations that are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss." *Camp*, 2016 WL 3181743, at *4. The plaintiff's evidence must be "so clear, direct, weighty and convincing as to enable a

clear conviction, without hesitation about whether or not the defendants acted in bad faith."
*Houtz v. State Farm Fire and Cas. Co.*, 754 F. Supp. 3d 594, 598 (E.D. Pa. 2024) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)).

IV.    **ANALYSIS**

   A.  **Amount in Controversy**

Progressive alleges that the amount in controversy in this case exceeds $75,000 because Rivera "alleges that she is entitled to . . . $50,000 in uninsured motorist coverage, as well as punitive damages, interest, and attorney's fees." Notice of Removal ¶¶ 16-17. Progressive suggests that Rivera's unquantified request for attorney's fees and punitive damages, coupled with her $50,000 compensatory damages demand, brings the amount in controversy to the required $75,000 threshold. *See id.* In her Motion to Remand, Rivera argues that this case does not meet the amount-in-controversy requirement and that Progressive knows this to be true, because its settlement offer was only for $19,000. *See* Motion to Remand ¶¶ 8, 17-18. The Motion to Remand does not appear to present a factual dispute, however, as Rivera stands by the damages figure in her Complaint, and only appears to highlight the disparity between Progressive's amount-in-controversy allegation ($75,000+), *see* Notice of Removal, and its $19,000 settlement offer, *see* Compl. at ¶ 40. *See* Motion to Remand at ¶¶ 4-9. Importantly, the amount in controversy is not determined by the defendant's valuation of a plaintiff's claims, but by "the sum demanded in good faith in the initial pleading," plus any "damages in excess of the amount demanded," if recoverable on the causes of action. 28 U.S.C. § 1446(c)(2). Thus, in this instance, the Court must look to "the face of the complaint," *Wilson*, 790 F. Supp. 2d at 407, to determine whether it is apparent "to a legal certainty" that Rivera *cannot* meet the jurisdictional threshold, *see Samuel-Bassett*, 357 F.3d at 397-98 (internal citations omitted). After reviewing the Complaint, the Court cannot make such a finding.

Pennsylvania law does not permit an award of punitive damages or attorney's fees on a breach of contract claim.[5] *See Collings v. State Farm Fire & Cas. Co.*, No. 2:22-cv-0057, 2022 WL 1291511, at *4 (E.D. Pa. Apr. 29, 2022) (citing *Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017) ("Under Pennsylvania law, punitive damages are not recoverable in a breach of contract claim."); *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.*, No. 06-cv-1517, 2006 WL 2871745, at * 4 (E.D. Pa. July 14, 2016) (finding that plaintiff could not recover attorney's fees or punitive damages on a breach of contract claim); *Merlino v. Del. Cnty.*, 728 A.2d 949, 951 (Pa. 1999) ("[T]here can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception.")). However, punitive damages and attorney's fees are available on a successful bad faith claim. 42 Pa. C.S. § 8371 ("In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may. . . [a]ward punitive damages against the insurer [and] . . . [a]ssess court costs and attorney fees against the insurer."); *see Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529-32, 538-39 (3d Cir. 1997) (explaining that punitive damages are recoverable, and attorney's fees may be awarded, on a successful bad faith claim).

Here, the Complaint indicates that Rivera's policy with Progressive "provided uninsured and underinsured motorist bodily injury coverage in the amount of $50,000 per person and $100,000 per incident with non-stacked coverage." Compl. at ¶ 35. Rivera seeks judgment "in an amount in excess of Fifty Thousand Dollars ($50,000.00)," plus compensatory damages, punitive

---

[5]      An exception to the general rule that attorney's fees do not constitute part of the amount in controversy in a breach of contract action presents when the terms of the underlying contract provide for the payment of attorney's fees. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397 n.11 (3d Cir. 2016) (citing 14AA *Wright & Miller's Federal Practice & Procedure* § 3712 (4th ed. 2016)).

damages, interest, costs of suit, attorney's fees and any other damages permissible. *Id.* at ¶¶ 58, 65, 81, 88. Rivera's request for an amount "in excess of" $50,000 suggests that this amount represents the "low end of an open-ended claim," *see Angus*, 989 F.2d at 146, and that the amount recoverable in compensatory damages could be higher. Though the Court cannot consider interests and costs of suit when calculating the amount in controversy, *see* 28 U.S.C. § 1332(a) ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"), the Court may consider attorney's fees and punitive damages to the extent they are recoverable on the bad faith claims. *See* 42 Pa. C.S. § 8371. Rivera does not quantify the punitive damages she seeks, *see* Compl., but any punitive damages demand would not comprise the bulk of the jurisdictional amount required since Rivera's compensatory demand is at least $50,000, *see Packard*, 994 F.2d at 1046. Plus, without a measurable demand for punitive damages, the Court cannot find that any such demand is "patently frivolous." *See id.*

This Court has before found that, where a plaintiff requests around $50,000 in compensatory damages and states a claim which, if granted, could warrant punitive damages, then the estimates for compensatory damages, punitive damages, and attorney's fees, together, can combine to satisfy the $75,000 amount-in-controversy requirement. *See Minissale*, 988 F. Supp. 2d at 477-79 (dismissing notice of removal as untimely but otherwise finding that compensatory damages estimate of $55,315, plus punitive damages and attorney's fees, could satisfy minimum amount-in-controversy requirement of $75,000); *Wilson*, 790 F. Supp. 2d at 407-10 (denying motion to remand where plaintiff sought damages "in a sum not in excess of fifty thousand ($50,000.00) dollars" so as to compel arbitration, because the statutory cap on amount in controversy sets a limit on who may access arbitration, not what is ultimately

11
051125

recoverable in a case). In cases where the compensatory damages estimate was negligible compared to the request for punitive damages and attorney's fees, courts have declined to combine the amounts to determine whether the jurisdictional threshold was met. *See Davis*, 2026 WL 982864, at *1-2 (remanding case where complaint estimated the total cost of repairs to insureds' damaged car to be $14,097.79, and their motion to remand explained that they alleged damages of over $50,000 only to avoid mandated arbitration); *Creasey v. Hydro Extrusion USA, LLC*, No. 24-cv-6458, 2025 WL 28242, at *1-2 (E.D. Pa. Jan. 3, 2025) (remanding case where notice of removal alleged that plaintiff's $4,318.13 claim could reach the jurisdictional threshold when coupled with attorney's fees; finding that an assumption of $70,681.88 in attorney's fees would be outside the realm of reason); *see also The Bachman Co. v. MacDonald*, 173 F. Supp. 2d 318, 322-28 (E.D. Pa. 2001) (granting motion to remand where conjectural, speculative evidence did not lend support for defendant's argument on removal that amount in controversy exceeded $75,000).

Here, the compensatory damages estimate of $50,000 in uninsured motorist coverage is not negligible, and it is entirely plausible that Rivera may be awarded punitive damages and attorney's fees that collectively exceed $25,000 if her bad faith claims are successful. When combined, it is reasonable to conclude that the $75,000 amount-in-controversy requirement is met. On its face, the Complaint does not indicate that Rivera is unable to meet the minimum jurisdictional threshold, and the Court is far from being legally *certain* that she cannot meet it. After conducting "a reasonable reading of the value of the rights being litigated," *Angus*, 989 F.2d at 146, the Court finds that Progressive has met its burden to establish the amount in controversy necessary for diversity jurisdiction. Rivera's Motion to Remand will be denied.

**B. Bad Faith**

Rivera's Complaint also makes several unsupported allegations of bad faith conduct. Count II alleges that Progressive offered an amount of money on the uninsured motorist claim that "bears no reasonable basis or rational relationship to the economic and non-economic losses sustained," because Rivera "submitted documentation of damages in an amount far exceeding the amount offered" under the policy. Compl. at ¶ 60(a). Rivera describes a host of medical treatments she underwent, but does not attach, or recount the details of, any itemized statements or medical bills resulting from such treatment. The only supporting documentation regarding Rivera's medical expenses is an October 6, 2025 email communication from the claims department at Progressive, in which they offered $19,000 to settle Rivera's uninsured motorist claim "based on the information [they] ha[d] to date" regarding Rivera's medical bills, including those from Good Sheperd Rehabilitation, Lehigh Valley Hospital, LVPG Concussion and Head Trauma, VHP Centro De Salud, and CRB MRI. *See* Compl. Exhibit "C," ECF No 1. at 45. There is no indication that the sum of these medical bills did not total $19,000, or that this offer reflected "an underlying element of self-interest or ill will." *See O'Brien*, 2021 WL 3203405, at *2. Rather, Progressive indicated a good faith effort to maintain an accurate claims assessment, indicating in the same email that it would "reassess" its evaluation "as new information comes in." *See* Compl. Exhibit "C." This also undermines Rivera's assertions that Progressive failed to "evaluate" and "re-evaluate" her uninsured motorist claim, *see id.* at ¶¶ 60(c)-(d), or that it failed to "conduct a reasonable, good-faith, and thorough investigation into . . . Rivera's claims and supporting documentation," *id.* at ¶ 60(k); *see id.* at ¶¶ 60(q)-(r).

The Complaint also makes several conclusory allegations of bad faith. Rivera alleges that Progressive engaged in "dilatory and obstructive" practices which caused "delays in correspondence, evaluation, and settlement negotiations," *id.* at ¶ 60(b), but she does not provide

13

any factual details regarding the alleged delays or when they occurred, *see id.* at ¶¶ 60(g), (i)-(j), (y). By way of factual support, Rivera states only that she "notified" Progressive of "her intent to pursue an uninsured motorist claim" upon learning that the third-party tortfeasor did not maintain liability coverage. *Id.* at ¶ 39. Without knowing when Rivera learned of the third-party's uninsured status and notified Progressive, the Court cannot assume that Progressive's October 6, 2025 settlement offer was "delayed." *See id.* at ¶ 40. Moreover, it is unclear when Rivera officially filed her uninsured motorist claim. The Complaint merely states that she did so "[p]rior to the filing of this Complaint." *Id.* at ¶ 42. Simply put, there is not enough support for Rivera's allegations of delay and obstruction because, without a temporal frame of reference, the Court cannot find that Progressive's resolution efforts were dilatory or its actions untimely.

Other unsupported allegations of bad faith in the Complaint include the following assertions: that Progressive failed "to adopt and/or implement reasonable claims-handling standards and procedures," *id.* at ¶ 60(e); "refus[ed] to offer fair compensation," *id.* at ¶ 60(h); "violat[ed] the fiduciary duty voluntarily assumed by [Progressive] and owed to [its] insureds," *id.* at ¶ 60(m); "fail[ed] to obtain medical authorizations, schedule or complete an Independent Medical Examination (IME)," *id.* at ¶ 60(s); made "dishonest, misleading and unsupported defenses" in response to Rivera, *id.* at ¶ 60(t); "fail[ed] to obtain or seek full policy limit settlement authority from individuals empowered to authorize such payments," *id.* at ¶ 60(u); "fail[ed] to adhere to established and customary industry standards and practices," *id.* at ¶ 60(w); subjected Rivera to "prolonged and unnecessary emotional distress, anxiety, and uncertainty," *id.* at ¶ 60(y); and was generally "unreasonable" and "unfair," *see id.* at ¶¶ 60(f), (l), (n)-(o). These allegations of bad faith conduct, though varied, do not offer sufficient detail as to where, when, and how these events occurred. *See Rosenberg v. Amica Mut. Ins. Co.*, No. 18-cv-406, 2018 WL

4944396, at *3 (W.D. Pa. July 12, 2018), *report and recommendation adopted*, No. 18-cv-406, 2018 WL 4944372 (W.D. Pa. July 30, 2018). Accordingly, the Court cannot find that Rivera's evidence is "clear and convincing" with respect to Count II. *Camp*, 2016 WL 3181743, at *4.

Finally, it is unclear from the factual allegations whether Progressive truly "denied" Rivera benefits under the policy, or merely valued Rivera's claim in a way she found displeasing. Disagreement over the value of an insurance claim, alone, is insufficient to state a claim for bad faith. *See Litman v. GEICO Cas. Co.*, No. 22-cv-04530, 2023 WL 8091982, at *3 (E.D. Pa. Nov. 21, 2023) (explaining that an insurance company's "failure to offer [plaintiffs] their demanded policy limits cannot, without more, amount to bad faith"); *see also Pasqualino v. State Farm Mut. Auto. Ins. Co.*, No. 15-cv-77, 2015 WL 3444288, at *5 (E.D. Pa. May 28, 2015) (finding that there were no "factual allegations from which the Court could make a plausible inference that Defendant knew or recklessly disregarded its lack of a reasonable basis for denying benefits" since the complaint showed only that the plaintiff disagreed with the insurer's offer). Moreover, to the extent Rivera alleges that Progressive's valuation of her claim was "unreasonable," she still has not shown that Progressive "knew or recklessly disregarded [a] lack of reasonable basis" when it made its calculation. *Camp*, 2016 WL 3181743, at *4. Because Rivera's allegations "are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss," *id.*, the Court will dismiss Count II of the Complaint without prejudice, and with leave to amend.[6] Rivera is cautioned that any amended complaint "must specifically include facts to address 'who, what,

---

[6]     *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile") (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

where, when, and how the alleged bad faith conduct occurred.'" *Rosenberg*, 2018 WL 4944396, at *3.

## V.    CONCLUSION

The Court finds that Progressive has established that the amount in controversy meets the minimum required threshold necessary to establish diversity jurisdiction under 28 U.S.C. § 1332. Since the Court has subject matter jurisdiction over the instant case, the Motion to Remand is denied. The Court also finds that Rivera has failed to allege facts sufficient to state a bad faith claim against Progressive, and so it dismisses Count II of the Complaint, and grants Rivera leave to amend. Since the dismissal of Count II is without prejudice, Progressive's Motion to Dismiss is granted in part.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

16
051125